IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN MICHAEL COHEN,<br><br>    Plaintiff,<br><br> v.<br><br>SEGAL & COMPANY, LLC and STEVEN A. SEGAL,<br><br>    Defendants. | Civil Action No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Steven Michael Cohen ("Plaintiff"), by and through his undersigned attorneys, as and for his complaint against Defendants Segal & Company LLC and Steven A. Segal (collectively, "Defendants"), respectfully alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Defendants, his accountant and accounting firm, to recover damages he sustained due to Defendants' accounting malpractice and breaches of fiduciary duties.

2. Specifically, Defendants' failure to stay abreast of important changes to applicable laws and regulations, and to advise Plaintiff accordingly, caused Plaintiff to pay a substantial amount of unnecessary tax. Defendants also repeatedly filed Plaintiff's tax returns late, resulting in additional damages to Plaintiff.

3. Plaintiff therefore seeks to recover his damages arising from Defendants' failure to act as a reasonably prudent professional would have under the circumstances of this case.

## PARTIES

4. Plaintiff is a natural person who is resident of and domiciled in Puerto Rico.

5. Defendant Segal & Company, LLC is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Jenkintown, Pennsylvania. Upon information and belief, Defendant Segal & Company, LLC is a licensed professional with offices in Montgomery County, Pennsylvania. Plaintiff is asserting a professional liability claim against this defendant.

6. Upon information and belief, Segal & Company, LLC's sole member is Defendant Steven A. Segal, who is a resident of and domiciled in the Commonwealth of Pennsylvania. Upon information and belief, Defendant Steven A. Segal is a licensed professional with offices in Montgomery County, Pennsylvania. Plaintiff is asserting a professional liability claim against this defendant.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that there is complete diversity between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 insofar as Defendants reside in this District.

## BACKGROUND FACTS

9. Plaintiff has operated as a dealer in securities for many years.

10. During that time, on Defendants' advice, Plaintiff filed an election under Internal Revenue Code ("IRC") § 475 to apply the mark-to-market method of accounting with respect to his securities business.

11. More specifically, mark-to-market elections were made separately for Plaintiff and for Plaintiff's business entity, Alta Partners LLC ("Alta").

12. During the relevant time period, Plaintiff owned a 99.5% membership interest in Alta, and Plaintiff's father owned the remaining 0.5% interest.

13. Throughout the period between when the elections were made and the present, Plaintiff has conducted the majority of his securities business through Alta.

14. The mark-to-market elections both Plaintiff and Alta put in place allowed Plaintiff to recognize gain or loss from the securities he owned (whether directly or through Alta) as ordinary income or losses, rather than capital gain or losses, on deemed sales of these securities at the end of each year.

15. To the extent Alta recognized net gain or loss from the application of its own mark-to-market election to its securities holdings, Plaintiff would have been entitled and required to include 99.5% of those gains or losses in his own individual tax return.

16. The advantage to Plaintiff of this special accounting method was that at the time Defendants advised Plaintiff to elect this tax treatment, a taxpayer could apply net operating losses resulting from the mark-to-market election in a particular tax year to the prior two tax years.

17. Because these losses would be ordinary losses rather than capital losses, they could be applied to any ordinary income generated by Plaintiff in those prior years, whether from the mark-to-market election or other sources.

18. Several years after Defendants advised Plaintiff to make the mark-to-market election, but while Defendants were still advising him, the applicable law on net operating carryovers changed.

19. Specifically, following the passage of the Tax Cuts and Jobs ("TCJA") Act and the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, net operating losses generated by a taxpayer from January 1, 2021 onward could not be carried back to prior tax years.

20. This change eliminated Plaintiff's main reason for the election under IRC § 475. Defendants failed to advise Plaintiff of this change in the law and admitted to not having been aware of this change in the law at the time.

21. In any case, Defendants made no effort to mitigate the effects to Plaintiff of this change in the law at the time the change became effective. Specifically, Defendants failed to advise Plaintiff to revoke the election under IRC § 475 by the deadline for such a revocation to take effect for 2021 (the first year in which the change in the law took effect).

22. Under published guidance from the Internal Revenue Service ("IRS"), Plaintiff could have revoked the mark-to-market election for 2021 and later years by filing a Notification Statement with the IRS with the request filed in 2021 to extend the due date of the 2020 federal income tax return and complying with the other requirements of that IRS guidance.

23. This failure led to direct harm to Plaintiff, as he reported substantial gain in 2021 and substantial loss in 2022, both of which were at least in part the result of the mark-to-market method of accounting Plaintiff was still using.

24. Because losses from January 1, 2021 onward cannot be carried back, any advantage to Plaintiff from the IRC § 475 election was eliminated, and Plaintiff was required to pay millions of dollars of unnecessary state and federal tax for 2021 because of the failure to revoke the election.

25. Such a revocation would have allowed Plaintiff to recognize gain or loss on the securities only upon actual sales, rather than on deemed sales based on end-of-year market values.

26. Thus, Defendants' failure to advise Plaintiff to revoke the IRC § 475 election following the change in the law constituted a failure to act as a reasonable professional in the circumstances and a departure from accepted standards of accounting practice, and led to substantial harm to Plaintiff.

27. Furthermore, Defendants' failure to inform Plaintiff of this significant change in the law (which had undermined the chief reason for making the election in the first place) denied him the opportunity to consider what steps he might take to mitigate any harm from this change.

28. The first evidence that Defendants had become aware of the change in the law governing net operating losses was in April 2023, when Defendants attempted to revoke the mark-to-market elections made by Plaintiff and Alta effective for the 2023 tax year.

29. Prior to that time, Plaintiff, who is not a tax professional and has no special knowledge of tax law, could not have known of Defendants' failure to advise him of this change in the law. Plaintiff could only discover this fact after Defendants informed him of their mistake.

30. Upon information and belief, Defendants failed to follow the proper procedures published by the IRS for revoking the mark-to-market elections for Plaintiff and Alta for the 2023 tax years.

31. Accordingly, upon information and belief, Defendants failed to revoke the mark-to-market elections for both Plaintiff and Alta for the 2023 tax year.

32. In fact, in March 2024, the IRS confirmed to Plaintiff's new tax advisors that Defendants had not properly revoked Alta's mark-to-market election for 2023.

33. Further, Alta was eligible to elect to pay New York State Pass-Through Entity Tax ("PTET") for the 2021 tax year.

34. The PTET functions as a workaround to the state and local tax itemized deduction cap created by the TCJA. Electing to pay PTET would have allowed Alta to deduct the full amount of that tax on its 2021 federal tax return, thereby passing through less income to Plaintiff to report on his individual federal tax return for the 2021 return.

35. Because Alta did not elect to pay PTET at the entity level, Plaintiff was limited to deducting $10,000 in state and local taxes on his individual federal tax return for the 2021 tax year.

36. Had Defendants advised Plaintiff and Alta to pay the PTET at the entity level in 2021, Plaintiff would not have been limited by the state and local tax itemized deduction cap created by the TCJA.

37. Defendants' failure to advise Plaintiff and Alta to elect to pay PTET caused Plaintiff to pay unnecessary federal tax in 2021.

38. Accordingly, Defendants' failure to advise Plaintiff to cause Alta to elect to pay PTET in 2021 constituted a failure to act as a reasonable professional in the circumstances and a departure from accepted standards of accounting practice, and led to substantial harm to Plaintiff.

39. In addition, Plaintiff has incurred damages because of Defendants' late filing of his 2020, 2021, and 2022 tax returns. Plaintiff provided Defendants with signed copies of the returns with sufficient time for Defendants to make a timely filing on Plaintiff's behalf, but Defendants failed to do so.

40. Plaintiff has incurred hundreds of thousands of dollars in late fees and penalties as a result of Defendants' late filing of Plaintiff's tax returns.

## COUNT I
**(Accounting Malpractice/Professional Negligence)**

41. Plaintiff hereby repeats and re-alleges each of the foregoing allegations as if set forth fully herein.

42. As Plaintiff's accountants, Defendants owed Plaintiff a duty to, among other things, use such skill in the performance of their duties for Plaintiff as reasonably prudent, skillful accountants would use under the circumstances.

-7-

43. Under the circumstances of this matter, a reasonably prudent, skillful accountant would have kept abreast of changes in applicable law and advised Plaintiff accordingly. Defendants breached the duties they owed to Plaintiff, and departed from accepted standards of accounting practice, by failing to do so.

44. In particular, Defendants breached the duties they owed to Plaintiff by failing to advise Plaintiff to revoke the election under IRC § 475 by the deadline for such a revocation to take effect.

45. Additionally, Defendants breached the duties they owed to Plaintiff by failing to advise Plaintiff to cause Alta to elect to pay PTET for the 2021 tax year.

46. Further, Defendants breached the duties they owed to Plaintiff by failing to timely file Plaintiff's 2020, 2021, and 2022 tax returns, even though they were timely provided with signed copies of the returns in advance of the filing deadlines for those returns.

47. Plaintiff was harmed by reason of Defendants' breaches of their duties. Defendants' failure to properly advise Plaintiff caused Plaintiff to pay no less than $13,295,659 in unnecessary state and federal tax. Defendants' failure to timely file Plaintiff's 2020, 2021, and 2022 tax returns caused Plaintiff to incur substantial additional damages, including no less than $228,626 in state and federal late filing fees, penalties, and interest.

48. Defendants' breaches of their duties to Plaintiff were the cause of Plaintiff's damages.

49. Specifically, but for Plaintiff's failure to stay abreast of changes in the law and to advise Plaintiff to revoke the election under IRC § 475 by the applicable deadline, Plaintiff would not have paid any of the unnecessary tax that he was forced to pay.

50. Additionally, but for Plaintiff's failure to advise Plaintiff to cause Alta to elect to pay PTET for the 2021 tax year, Plaintiff's federal tax liability for that year would have been substantially lower.

51. Further, but for Defendants' failure to timely file Plaintiff's 2020, 2021, and 2022 tax returns, Plaintiff would not have incurred additional damages, including the late filing fees, penalties, and interest.

52. Plaintiff is entitled to recover from Defendants his damages sustained by reason of Defendants' accounting malpractice.

## COUNT II
### (Breach of Fiduciary Duty)

53. Plaintiff hereby repeats and re-alleges each of the foregoing allegations as if set forth fully herein.

54. Defendants served as Plaintiff's bookkeeper, accountant, tax advisor, tax preparer, and business confidante over the course of many years. The professional services and advice rendered by Defendants to Plaintiff gave rise to a confidential, fiduciary relationship between Plaintiff and Defendants.

55. In seeking Defendants' professional advice, Plaintiff placed his trust and confidence in Defendants' knowledge and integrity as licensed professionals, and expected in return service performed with skill and confidentiality.

56. Defendants accepted the confidential, fiduciary relationship formed with Plaintiff by agreeing to perform services for Plaintiff, and by accepting payment from Plaintiff for those services.

57. By virtue of that relationship, Defendants owed Plaintiff a fiduciary duty to, among other things, use such skill in the performance of their duties for Plaintiff as a reasonably prudent, skillful accountant would use under the circumstances.

58. Defendants breached their fiduciary duties owed to Plaintiff by, among other things, failing to stay abreast of changes in applicable law and to advise Plaintiff accordingly.

59. In particular, Defendants breached their fiduciary duties to Plaintiff by failing to advise Plaintiff to revoke the election under IRC § 475 by the deadline for such a revocation to take effect.

60. By failing to stay abreast of current law and to advise Plaintiff accordingly, Defendants failed to act in good faith and solely for Plaintiff's benefit.

61. In addition, Defendants breached their fiduciary duties to Plaintiff by failing to advise Plaintiff to cause Alta to elect to pay PTET for the 2021 tax year.

62. Further, Defendants breached their fiduciary duties to Plaintiff by failing to timely file Plaintiff's 2020, 2021, and 2022 tax returns.

63. By failing to timely file Plaintiff's 2020, 2021, and 2022 tax returns, Defendants failed to act in good faith and solely for Plaintiff's benefit.

64. Plaintiff was harmed by reason of Defendants' breaches of their fiduciary duties. Defendants' failure to properly advise Plaintiff caused Plaintiff to pay no less than $13,295,659 in unnecessary state and federal tax.

65. In addition, Defendants' failure to timely file Plaintiff's 2020, 2021, and 2022 tax returns caused Plaintiff to incur no less than $228,626 in state and federal late filing fees, penalties, and interest.

66. Defendants' breaches of their fiduciary duties to Plaintiff were the cause of Plaintiff's damages.

67. Specifically, but for Plaintiff's failure to stay abreast of changes in the law and to advise Plaintiff to revoke the election under IRC § 475 by the applicable deadline, Plaintiff would not have paid any of the unnecessary tax that he was forced to pay.

68. Additionally, but for Plaintiff's failure to advise Plaintiff to cause Alta to elect to pay PTET for the 2021 tax year, Plaintiff's federal tax liability for that year would have been substantially lower.

69. Further, but for Defendants' failure to timely file Plaintiff's 2020, 2021, and 2022 tax returns, Plaintiff would not have incurred additional damages, including late filing fees, penalties, and interest.

70. Plaintiff is entitled to recover from Defendants his damages sustained by reason of Defendants' breaches of their fiduciary duties.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment as follows:

a) On Count I, awarding monetary damages in an amount to be determined at trial;

b) On Count II, awarding monetary damages in an amount to be determined at trial;

c) Awarding Plaintiff prejudgment and post-judgment interest; and

d) Awarding Plaintiff such other and different relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
      March 18, 2024

**DAY PITNEY LLP**

By: */s/ Elizabeth J. Sher*
Elizabeth J. Sher, Esq.
PA Attorney ID 207853
One Jefferson Road
Parsippany, NJ 07054
Phone: (973) 966-6300
Email: esher@daypitney.com

Jeffrey P. Mueller (*pro hac vice* forthcoming)
Matthew J. Letten (*pro hac vice* forthcoming)
Day Pitney LLP
Goodwin Square
225 Asylum Street
Hartford, Connecticut 06103
Phone: (860) 275-0100
Email: jmueller@daypitney.com
       mletten@daypitney.com

Gregory R. Bruno (*pro hac vice* forthcoming)
Day Pitney LLP
605 Third Avenue, 31st Floor
New York, New York 10158
Phone: (212) 297-5800
Email: gbruno@daypitney.com

*Attorneys for Plaintiff Steven Michael Cohen*